1

2

3                                    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  AL DAVIS,                )    Case No. EDCV 10-01483
                             )    VAP(DTBx)
12              Plaintiff,   )
                             )    **ORDER GRANTING DEFENDANTS'**
13        v.                 )    **MOTION FOR SUMMARY JUDGMENT**
                             )
14  DALE MA; ROSCOE BK       )
    RESTAURANT, INC.; GLORIA )
15  GARDUNO; AND GUADALUPE   )
    ROJAS,                   )
16                           )
17              Defendants.
    _____

18

19       Before the Court is a Motion for Summary Judgment

20  ("Motion") filed by Defendants Roscoe BK Restaurant,

21  Inc., Dale Ma, Guadalupe Rojas, and Gloria Garduno

22  (collectively "Defendants").  After considering the

23  papers and arguments in support of, and in opposition to,

24  the Motion, the Court GRANTS Defendants' Motion.

25

26                  **I. PROCEDURAL HISTORY**

27       On October 4, 2010, Plaintiff Al Davis ("Plaintiff")

28  filed a complaint ("Complaint") alleging claims for: 1)

    violations of the Americans with Disabilities Act

("ADA"); 2) violations of the Unruh Civil Rights Act, Cal. Civ. Code § 51; and 3) intentional infliction of emotional distress.  (Doc. No. 3.)

On December 16, 2010, Defendants filed a Motion to Strike Plaintiff's "SLAPP" claims, arguing Plaintiff's state law claims should be stricken because Plaintiff could not demonstrate a reasonable probability of success on the merits.  (Doc. No. 9.)  The Court denied the motion on January 31, 2011, finding Plaintiff's claims were not "'cause[s] of action against [Defendants'] arising from any act of [Defendants] in furtherance of [Defendants'] right of petition or free speech under the United States or California Constitution.'"  (Jan. 31 Order (Doc. No. 17) (quoting Cal. Civ. Proc. Code § 425.16).)

Defendants then filed a Motion to Strike Portions of the Complaint on March 1, 2011, moving to strike Paragraph 21 under Federal Rule of Civil Procedure 12(f). (Doc. No. 18.)  Defendants argued Plaintiff's allegations of perjury, concealment, and collusion to obstruct justice were "scandalous," "impertinent," and "irrelevant matters," and requested the Court strike Paragraph 21 because it alleged privileged conduct under California Civil Code Section 47.  (Id. at 6.)  The Court agreed that Paragraph 21 involved privileged communications

under California Civil Code Section 47(b) and granted
Defendants' motion.  (Apr. 8 Order (Doc. No. 21) at 6
(citing <u>Kimes v. Stone</u>, 84 F.3d 1121, 1126-27 (9th Cir.
1996)) (noting that "[f]or well over a century,
communications with 'some relation' to judicial
proceedings have been absolutely immune from tort
liability by the privilege codified as section 47(b). . .
. [T]he privilege is now held applicable to any
communication . . . and all torts except malicious
prosecution" (citation omitted)).)

On November 28, 2011, Defendants filed this Motion.
(Doc. No. 39.)  In support of their Motion, Defendants
attached the following documents:

    1)    Declaration of Dale Ma ("Ma Declaration") (Doc.
No. 40);

    2)    Declaration of Laura Hintz ("Hintz Declaration")
(Doc. No. 41);

    3)    Declaration of Courtney M. Coates ("Coates
Declaration") (Doc. No. 42);

    4)    Request for Judicial Notice (Doc. No. 43);

    5)    Declaration of Dr. Charanpreet Boparai ("Boparai
Declaration") (Doc. No. 44);

    6)    Declaration of Peter Cossar ("Cossar
Declaration") (Doc. No. 45);

7)   Declaration of Sally Montrucchio ("Montrucchio
     Declaration") (Doc. No. 46); and

8)   Statement of Uncontroverted Facts ("SUF") (Doc.
     No. 47).

On December 12, 2011, Plaintiff filed an ex parte application to reopen discovery and continue Defendants' Motion for 90 days.  (Doc. No. 50.)  Defendants filed their opposition on December 13, 2011.  (Doc. No. 51.) The Court denied Plaintiff's application on December 16, 2011, and rescheduled the hearing on this Motion from January 9, 2012, to January 23, 2012.  (Doc. No. 52.)

Plaintiff filed his Opposition to the Motion on January 3, 2012, and attached the following documents:

1)   Declaration of Al Davis ("Davis Declaration");

2)   Declaration of Herman Clavon ("Clavon
     Declaration"); and

3)   Statement of Genuine Issues ("SGI").  (Doc. No.
     53).

Defendants filed their Reply on January 9, 2012, (Doc. No. 58), along with their evidentiary objections (Doc No. 59).

## II. LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson</u>, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998) (citing <u>Anderson</u>, 477 U.S. at 256-57); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-

moving party's case.  Id.; Horphang Research Ltd. v. Garcia, 475 F.3d 102,

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. FACTS

**A.  Preliminary Evidentiary Issues**

Plaintiff filed an Objection to Defendants' Evidence, challenging specific statements in the declarations of Dale Ma, Laura Hintz, and Sally Montruccio.  (Doc. No. 56.)  As the Court does not rely on the statements in Mr. Ma's declaration to which Plaintiff objects, the Court only addresses Plaintiff's objections to Ms. Hintz's and Ms. Montruccio's declarations.

Plaintiff argues that both Ms. Montruccio and Ms. Hintz are lay witnesses with no legal training, who therefore cannot give their opinions on what constitutes a service animal under California or federal law.  (Id. at 4-6.)  The Court overrules Plaintiff's objections to the declarations of Ms. Hintz and Ms. Montruccio.  Ms. Hintz provides a thorough description of her job as the Field Services Representative of the Department of Animal Care and Services for the City of Rancho Cucamonga, and the Court finds her qualified to describe the Department's procedures for licensing dogs.  (See Hintz Decl. ¶¶ 1-2.)  To the extent Plaintiff intended his objection as one for lack of foundation, the objection lacks merit.

Ms. Montruccio also details her expertise in training service dogs, and provides a thorough explanation for her

1  conclusion that the puppy was not a trained service
2  animal.  There is sufficient foundation for her opinion.
3  (<u>See</u> Montruccio Decl. ¶¶ 4-24.)

4

5  **B.  Uncontroverted Facts**

6      In his SGI, Plaintiff attempts to dispute 34 of
7  Defendants' 35 alleged uncontroverted facts.[1]  To the
8  extent those facts are not mentioned, the Court has not
9  relied on them in reaching its decision.[2]

10

11      The following material facts are supported adequately
12  by admissible evidence and are uncontroverted.  They are
13  "admitted to exist without controversy" for the purposes
14  of Defendants' Motion.  <u>See</u> L.R. 56-3 (facts not
15  "controverted by declaration or other written evidence"
16  are assumed to exist without controversy); Fed. R. Civ.
17  P. 56(e)(2) (where a party fails to address another
18  party's assertion of fact properly, the court may
19  "consider the fact undisputed for purposes of the
20  motion").

21

22  _____

23      [1] The majority of Plaintiff's purported disputes do
    not address the facts or sources of evidence Defendants
24  present, but instead, propound legal arguments as to the
    merits of the case.  (<u>See generally</u> SGI.)  As these
25  arguments do not address whether the proffered facts are
    disputed, the Court accords them no significance.

26

27      [2] As the Court does not rely on any of the exhibits
    attached to Defendants' Request for Judicial Notice, the
28  Court does not address the evidentiary issues raised
    concerning the exhibits' admissibility.

1    On December 28, 2008, Plaintiff entered Defendants'
2  Burger King restaurant on Roscoe Boulevard, Van Nuys,
3  California ("restaurant") with a 13 week old puppy
4  Plaintiff was training to be a service dog ("the puppy").
5  (Compl. ¶ 12; Davis Decl. ¶ 4.)  On the entrance to the
6  restaurant were posted two signs stating: "No animals
7  except for service animals"; and "No animals except as
8  allowed by state law."  (Ma Decl. ¶ 5, Ex. 3; Davis Decl.
9  ¶ 5.)

10

11    When Plaintiff attempted to order food, a restaurant
12  staff member asked Plaintiff to leave because of the
13  restaurant's "no dogs" policy.  (Davis Decl. ¶ 5.)
14  Plaintiff asked to speak with the manager and explained
15  to the staff member that the puppy was a service dog in
16  training.  (Davis Dep. 17:5-8, 18:10-15.)

17

18    The manager, Defendant Gloria Garduno, repeated that
19  dogs were not allowed and pointed to the sign on the
20  outside of the restaurant.  (Davis Dep. 17:17-19.) She
21  also asked to see the puppy's "ID."  (Garduno Dep. 40:9-
22  10.)  When Plaintiff said he did not have one, she told
23  him he could not stay in the restaurant, but could either
24  take his order "to-go," or could leave the puppy
25  outside.[3]  (Garduno Dep. 17:10-17.)

26  _____

27    [3] Plaintiff claimed during his deposition that, after
   retrieving a camera from his car, he returned to the
28                                                 (continued...)

1   After leaving the restaurant, Plaintiff retrieved a

2   camera from his car and took pictures of the sign.

3   (Davis Dep. 17: 21-22.)

4

5   **1.  Plaintiff's Disability**

6   Plaintiff has a degenerative back disability, which

7   limits his ability to walk and sleep.  (Davis Decl. ¶ 2.)

8   Plaintiff's back problems date from 1988 when he suffered

9   a herniated disc and underwent surgery.  (Id.)  In 2004,

10  he dislocated the "T-10 through S-1 vertebrae disks

11  [sic]" in his back while working as a physician's

12  assistant.  (Id.)  His doctors recommended he undergo

13  another back surgery, but Plaintiff worried surgery would

14  not ameliorate his pain.  (Id.)  Since then, Plaintiff's

15  back pain has persisted, though the pain varies - some

16  days he is relatively pain free, while other days he

17  cannot get out of bed.  (Id.)

18

19  **2.  Plaintiff's Puppy**

20  Plaintiff's puppy is a Great Dane that was

21  approximately 13 weeks old at the time of the alleged

22

23      [3](...continued)

24  restaurant and asked to speak to the manager again.
    (Davis Dep. 17:22-23.)  Plaintiff did not recall the

25  entire conversation he had with the manager, but
    remembered the manager would not allow him to stay in the

26  restaurant with the puppy.  (Davis Dep. 18:4-6.)  Ms.
    Garduno, however, testified in her deposition that

27  Plaintiff never returned to the restaurant.  (Garduno
    Dep. 49:25.)  This dispute is irrelevant to the Court's

28  decision and therefore the Court need not resolve it.

denial of accommodation.  (Coates Decl. ¶ 3, Ex. 6; Hintz
Decl. ¶ 4.)  Plaintiff acquired the puppy in November
2008.  (Montrucchio Decl. ¶ 10.)  The puppy received a
service dog tag from the City of Rancho Cucamonga,
California on December 2, 2008, and a general dog license
on February 29, 2009.  (Hintz Decl. ¶ 7.)

### 3.  Puppy's Training

When Plaintiff entered the Burger King restaurant on
December 28, 2008, the puppy was not fully trained as a
service animal, but had some "basic obedience" training.[4]
(Montrucchio Decl. ¶¶ 10, 23.)  When Defendants allegedly
denied him accommodation, Plaintiff was attempting to
train the puppy to assist him with walking and balancing
inside restaurants.  (Montrucchio Decl. ¶ 10; Davis Decl.
¶ 4.)

As a young dog, the puppy still had a "playful"
streak.[5]  (Montrucchio Decl. ¶ 10.)  Additionally, the

---

[4] The parties do not dispute that the puppy received
a service dog tag prior to the alleged denial of
accommodation.  Plaintiff submits as an exhibit a picture
of a dog tag with the words "Rancho Cucamonga Service Dog
009," and asserts this is a "close up of just Barack's
service dog tag." (Davis Decl. ¶ 7, Ex. 2.)  Defendants
also present testimony that the Department of Animal Care
and Services for the City of Rancho Cucamonga issued a
service dog tag to the puppy prior to the alleged denial
of accommodation.  (Hintz Decl. ¶ 7.)

[5] Defendants' service dog expert, Ms. Montrucchio,
also testified that the puppy would have been a "safety
risk" at 13 weeks.  (Montrucchio Decl. ¶ 18.)  Ms.

(continued...)

11

1   puppy was too young to have complete control over its

2   bladder and bowels for extended training periods.

3   (Montrucchio Decl. ¶ 22.)   Thus, there was a risk that as

4   a young dog that was not fully trained, the puppy could

5   defecate or urinate in public places while being trained.

6   (Id.)

7

8      The puppy was not a trained service dog in December

9   2008, "under any circumstances, according to minimal

10   industry standards and practices."[6]   (Montrucchio Decl. ¶

11   9; Davis Decl. ¶ 4; Davis Dep. 13:15-22.)

12

13      Plaintiff is not a certified service dog trainer

14   based on industry standards.[7]   (Montrucchio Decl. ¶¶ 10,

15

16      [5](...continued)
Montrucchio is a Field Service Representative of the
17   Department of Animal Care and Services for the City of
Rancho Cucamonga.   (Id. ¶ 2.)
18

19      [6] Defendants claim Plaintiff has refused to allow
Defendants' expert, Ms. Montrucchio, to examine the
20   puppy, in violation of Rule 26, and include as an exhibit
a letter from Plaintiff's counsel arguing an expert
21   examination of the puppy would not be admissible
evidence.   (Coates Decl. ¶ 10, Ex. 12.)   Nevertheless,
22   Ms. Montrucchio provides her expert assessment - based on
the facts available - that the puppy is not a trained
23   service animal.   (Montrucchio Decl. ¶ 9.)   As Plaintiff
does not claim the puppy is a trained service animal, but
24   admits the puppy was still "in training," the Court does
not find this fact to be in dispute.   (Davis Dep. 5:11-
25   12.)

26      [7] Plaintiff claims there are no federal or state
certification requirements for trainers of service dogs.
27   (Davis Decl. ¶ 8 (citing Green v. Housing Auth., 994 F.
Supp. 1253, 1256 (D. Or. 1998)).)   Even if correct,
28                                                     (continued...)

23-24.)  Defendants' service dog expert stated that,
based on her assessment, Plaintiff was not competent to
train the puppy as a balance service dog.  (Id.)
Plaintiff also admitted during his deposition that he
could not recall when he read books to learn about
training service dogs, nor the names of the books he
read.[8]  (Davis Dep. 16:11-19.)

### 4.  Puppy's Vaccinations

Plaintiff's puppy was vaccinated for rabies on
December 31, 2008, three days after the alleged denial of
accommodation by Defendants' restaurant, at the Banfield
Pet Hospital in Rancho Cucamonga, California.[9]  (See
Boparai Decl. ¶ 3; Cossar Decl. ¶ 2.)

Although the puppy was issued a service dog tag on
December 2, 2008, the puppy did not obtain a dog license
until February 29, 2009, after being vaccinated for
rabies.  (Hintz Decl. ¶ 7.)

---

[7] (...continued)
Plaintiff does not provide any expert testimony or
declarations to support his claim that he was qualified
under industry standards to train the puppy to be a
service dog.

[8] After much questioning, Plaintiff did claim to have
read the book "Service Dog Training," though he could not
recall the page length of the book.  (Davis Dep. 16:22-
25.)

[9] Plaintiff claims to dispute this fact, but does not
provide any conflicting evidence.  (See SIG ¶ 14.)
Rather, Plaintiff claims this fact is "irrelevant" and
that he was "in total compliance with the law."  Id.

13

## C.   Disputed Facts

The parties dispute whether the puppy was able to ameliorate Plaintiff's disability, and specifically, whether the puppy could assist Plaintiff with balance and mobility.[10]  (See Davis Decl. ¶ 4; Mot. at 13.)  According to Defendants' service dog expert, the young puppy was not large enough to assist Plaintiff with walking or balancing.  (Montrucchio Decl. ¶ 23.)  In fact, Ms. Montrucchio testified that Plaintiff could have injured himself and the puppy if he had leaned on the puppy for balance when the puppy was just 13 weeks old.  (Id.)

Defendants also submit Plaintiff's deposition testimony, in which Plaintiff states the puppy served as "a reminder" not to put his complete body weight on his left side.  (Davis Dep. 15:10-12.)  When Defendants' counsel asked if the puppy could physically assist Plaintiff in walking, Plaintiff replied "no."  (Davis Dep. 15:17-20.)  Plaintiff also replied "no," when Defendants' counsel asked whether the puppy could physically assist him in balancing.  (Davis Dep. 15:21-24.)

---

[10] As service dogs, Great Danes primarily serve the function of assisting a disabled person in balancing. (Montrucchio Decl. ¶ 24.)

Plaintiff, however, submits a letter and two prescription notes written by Dr. Harding G. Young, which state that Plaintiff uses a service animal due to his "severe back pain / disc degeneration."  (Davis Decl. Ex. 1.)  Plaintiff also claims in his

declaration that he obtained the puppy "to personally train [the puppy] to assist [Plaintiff] with [his] degenerative spine-walking disability."  (Id. ¶ 8.)

Defendants note in their Reply, however, that Plaintiff's doctor has not submitted a sworn declaration identifying Plaintiff's disability and describing how a service animal could ameliorate the condition.  (Reply at 10.)

Defendants also argue that Plaintiff's declaration describing how the dog assisted him is "uncorroborated and self-serving" testimony and therefore does not raise a genuine issue of fact.  (Reply at 10 (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996); Johnson v. Washington Metro. Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989)).)

# IV. DISCUSSION

## A.   ADA and Unruh Civil Rights Act Claims

Title III of the ADA establishes that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ."  42 U.S.C. § 12182(a).[11]

To prevail on a Title III discrimination claim, the plaintiff must show that:

> (1)  She is disabled within the meaning of the ADA;
> (2)  The defendant is a private entity that owns, leases, or operates a place of public accommodation; and
> (3)  The plaintiff was denied public accommodations by the defendant because of her disability.

42 U.S.C. §§ 12182(a)-(b); Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007); see also Org. for

---

[11] The Unruh Civil Rights Act provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b); Goldman v. Standard Ins. Co., 341 F.3d 1023, 1026-27 (9th Cir. 2003).

As the Unruh Act has adopted the full expanse of the ADA's public accommodations provisions, the same standards of liability apply under both Acts.  Munson v. Del Taco, Inc., 46 Cal. 4th 661, 670 (2009); Cal. Civ. Code § 51(f).

1  <u>Advancement of Minorities with Disabilities v. Brick Oven</u>

2  <u>Rest.</u>, 406 F. Supp. 2d 1120, 1128 (S.D. Cal. 2005).

3

4      Here, Plaintiff claims he has a disability within the

5  meaning of the ADA, and that Defendants failed to

6  accommodate Plaintiff when they refused to allow him to

7  remain in the restaurant with his puppy.  (Compl. ¶ 12;

8  Davis Decl. ¶¶ 2-5.)

9

10     The parties do not dispute that Defendants are

11  private entities that own and operate a place of public

12  accommodation.  (Compl. ¶ 7; Answer (Doc. No. 22) ¶ 7);

13  <u>see also</u> 28 C.F.R. § 36.104 (restaurant or other

14  establishment serving food or drink constitutes place of

15  public accommodation).  Nor do the parties dispute that

16  Defendants' manager, Ms. Garduno, asked Plaintiff to

17  leave the restaurant on December 28, 2008, because he was

18  accompanied by the puppy.  (Davis Decl. ¶ 5; Garduno Dep.

19  5-12.)

20

21     Thus, the only elements of Plaintiff's ADA claim at

22  issue here are whether Plaintiff had a qualifying

23  disability, whether the puppy was a "service animal"

24  within the meaning of the ADA, and whether any defenses

25  apply.  The Court addresses each in turn.

26

27

28

1    **1.  Qualifying Disability**

2        To sustain a claim under the ADA Plaintiff must first

3    demonstrate a qualifying disability.  42 U.S.C. §

4    12182(a).  The ADA defines disability as:

5

6        1)   a physical or mental impairment that
             substantially limits one or more of the major
7             life activities of such individual;
        2)   a record of such impairment; or
8        3)   being regarded as having such impairment.

9    42 U.S.C. § 12102(2)(A)-(C).

10

11       The corresponding regulations specify further that a

12   "physical or mental impairment" includes "any

13   physiological disorder or condition."  29 C.F.R. §

14   1630.2(h)(1).  Thus, the ADA protects a broad array of

15   physical and mental impairments, including back

16   disabilities.  <u>Rood v. Umatilla Cnty.</u>, 526 F. Supp. 2d.

17   1164, 1175 (D. Or. 2007) (back problems such as

18   lumbosacral sacroiliac spondylosis, herniated disc, and

19   degenerative disc disease could qualify as disability

20   under ADA).

21

22       The federal regulations define "major life activity"

23   to include "caring for oneself, performing manual tasks,

24   seeing, hearing, eating, sleeping, walking, standing,

25   sitting, reaching, lifting, bending, speaking, breathing,

26   learning, reading, concentrating, thinking,

27   communicating, interacting with others, and working; and

28

1   the operation of a major bodily function."  29 C.F.R. §
2   1630.2(i)(1).

3

4        The federal regulations state that the terms "major"
5   and "substantially limits" should not be interpreted
6   strictly.  29 C.F.R. §§ 1630.2(i)(2), (j)(1).  The
7   primary focus of the ADA should not be whether an
8   individual's disability substantially limits a major life
9   activity, but rather, whether discrimination has
10  occurred.  29 C.F.R. §§ 1630.2(j)(1)(iii).

11

12       Defendants argue that Plaintiff's injury does not
13  substantially limit him.  To support this, Defendants
14  cite to the regulations' appendix, which states that
15  "temporary, non-chronic impairments of short duration,
16  with little or no long term or permanent impact, are
17  usually not disabilities."  (Mot. at 20 (citing 29 C.F.R.
18  Part 1630 App., § 1630.2(j)).)  Defendants do not,
19  however, submit any facts demonstrating that Plaintiff's
20  disability was temporary.[12]  Defendants instead seem to
21  argue that because Plaintiff stopped attending physical
22  therapy and has admitted to taking walks, his physical

23

24

25

26       [12] A condition which is chronic or merely in
    remission can still constitute a qualifying disability.
27  29 C.F.R. § 1630.2(j)(1)(vii).  Thus, even if Plaintiff's
    disability resulted in variable degrees of impairment, he
28  could still bring a claim under the ADA.

condition fails to meet the ADA definition for a
qualifying disability.[13]

Whether a person has a qualifying disability,
however, does not depend on whether she attends physical
therapy, nor must a plaintiff be completely unable to
walk to demonstrate a qualifying ambulatory disability or
back disability.  <u>See</u> 29 C.F.R. § 1630.2.

To survive a summary judgment motion in an ADA case,
"a plaintiff's testimony may suffice to establish a
genuine issue of material fact" regarding the impairment
of a major life activity.  <u>Head v. Glacier Nw., Inc.</u>, 413
F.3d 1053, 1059 (9th Cir. 2005).  At the same time,
however, "conclusory declarations are insufficient to
raise a question of material fact."  <u>Id.</u>

Here, Plaintiff explains the history of his back
condition, describes the pain he experiences as a result

_____

[13] Defendants cite to a previous defense verdict
against Plaintiff as evidence that Plaintiff does not
have a qualifying disability, and request the Court to
take judicial notice of the Order in that case.  (<u>See</u>
Requ. for Judicial Not. Ex. 17.)  Whether Plaintiff
suffered from a disability in February 2007, however,
neither proves nor disproves Plaintiff suffered from a
qualifying disability at the time of the instant alleged
failure to accommodate in December 2008.  Thus, while the
previous defense verdict is noticeable, <u>see</u> Federal Rule
of Evidence 201, and while the Court therefore grants the
Request for Judicial Notice to the extent that Defendants
attempt to assert issue preclusion here, the Court does
not rely on this evidence in reaching its decision.

of the condition, and states in his declaration: "Due to
my degenerative back problems I have difficult[y] walking
and sleeping."  (Davis Decl. ¶ 2.)   Plaintiff also
provides a letter from his doctor, which states that
Plaintiff "suffers from [a] severe back disability," and
a prescription note stating Plaintiff has "severe back
pain / disc degeneration."  (Davis Decl. Ex. 1.)   While
Plaintiff's declaration borders on conclusory, the
doctor's note tilts the balance in favor of finding a
triable issue of fact exists here regarding Plaintiff's
disability.

     Thus, viewing the facts in a light most favorable to
Plaintiff, a reasonable jury may conclude from this
evidence that Plaintiff's symptoms significantly
restricted him from at least one major life activity such
as sleeping or walking.[14]

### 2.   Service Animal

     Defendants argue that Plaintiff's dog did not qualify
as a "service animal" under the ADA because the dog was
not trained to work for Plaintiff to help ameliorate his
ADA disability.  (Mot. at 11.)   Defendants also maintain

---

     [14] In fact, Plaintiff need not demonstrate multiple
impairments resulting from his physical disability to
show the condition "substantially limits" a major life
activity.  Here, Plaintiff's inability to sleep could on
its own establish Plaintiff has a qualifying disability
under the ADA.  See 29 C.F.R. § 1630.2(j)(1)(viii).

that the ADA only covers licensed service animals, which
excludes an "untrained puppy" with no skills to
"differentiate him from an ordinary, well-mannered pet."
(Id. at 13.)

     Plaintiff argues federal law does not specify what
kind of training a dog must complete in order to qualify
as a service dog.  (Opp'n at 6.)  In the absence of
federal guidance, Plaintiff contends, California law
applies.  (Opp'n at 5 (citing Cal. Civ. Code § 54.2).)

     Though the federal regulations do not create a
federal certification process, the ADA's corresponding
regulations specify that a service animal "means any dog
that is individually trained to do work or perform tasks
for the benefit of an individual with a disability,
including a physical, sensory, psychiatric, intellectual,
or other mental disability."  28 C.F.R. § 36.104; see
also 42 U.S.C. § 12101 et seq.; Miller v. Ladd, No. CV
08-05595 NJV, 2010 WL 2867808, at *4 (N.D. Cal. July 20,
2010) (citing Vaughn v. Rent-A-Center, Inc., No.
2:06-cv-1027, 2009 WL 723166 at *10 (S.D. Ohio Mar. 16,
2009) (citing Access Now, Inc. v. Town of Jasper, Tenn.,
268 F. Supp. 2d 973, 980 (E.D. Tenn. 2003); Bronk v.
Ineichen, 54 F.3d 425, 431 (7th Cir. 1995))).
Additionally, "the work or tasks performed by a service
animal must be directly related to the individual's

1   disability."   28 C.F.R. § 36.104; see also Bronk, 54 F.3d

2   at 429.

3

4        To survive a motion for summary judgment, therefore,

5   Plaintiff must show there is a triable issue of fact as

6   to whether Plaintiff's puppy was "trained to work . . .

7   so as to help ameliorate" Plaintiff's back disability.[15]

8   See Davis v. Patel, No. CV 10-6239 PSG, 2011 WL 1155553,

9   at *4 (C.D. Cal. Mar. 28, 2011) (citing Miller, 2010 WL

10  2867808, at *4).

11

12       In Davis v. Patel, the court found a declaration

13  averring that Plaintiff was "turned away 'supposedly

14  because she had a licensed service dog with her'" did not

15  create a triable issue of fact sufficient to survive

16  Defendants' motion for summary judgment.  The court

17  reasoned that the affiant was not "qualified to expertly

18  opine on . . . whether [Plaintiff's]  disability required

19  a service dog."  Id. at *5.

20  _____

21       [15] The Ninth Circuit has found that a private
    entity's "certified" service requirement for service dogs

22  does not necessarily violate the ADA.  In Lentini v.
    California Center for the Arts, the Ninth Circuit found

23  that an art center's failure to accommodate a patron
    accompanied by a certified service dog violated the ADA.

24  370 F.3d 837 (9th Cir. 2004).  In finding the center did
    not reasonably accommodate the plaintiff, however, the

25  court did not criticize or reject the center's policy
    requiring service animals to be "certified."  Under that

26  policy, "certified" meant any animal "officially trained"
    to assist a person with a disability.  Id. at 840.  Thus,

27  the Court finds it can consider industry standards for
    certifying service dog trainers and licensing service

28  dogs in reviewing the evidence here.

Here, drawing all justifiable inferences in Plaintiff's favor, the Court finds the record does not contain admissible evidence demonstrating that Plaintiff's puppy was a trained service animal able to ameliorate Plaintiff's disability.

First, Plaintiff fails to present evidence creating a triable issue of fact as to whether the puppy was a trained service animal.  Rather, the uncontroverted facts show the 13 week old puppy was not fully trained as a service animal, and only had some "basic obedience" training.  (Montrucchio Decl. ¶¶ 10, 23; Davis Decl. ¶ 4.)  At the time of the incident, Plaintiff was still attempting to train the puppy to assist him with walking and balancing inside restaurants.  (Montrucchio Decl. ¶ 10; Davis Decl. ¶¶ 4-5.)

The only evidence Plaintiff submits showing the puppy was a licensed service dog is a picture of the puppy's service dog tags.  (Davis Decl. Ex. 2.)  This does not establish, however, that the puppy was a properly trained service animal within the meaning of the ADA. Defendants' service dog expert testified that Rancho Cucamonga's service dog tags are given out based on an "honor system."  (Hintz Decl. ¶ 9.)  If a person fills out an affidavit stating the dog is a "canine licensed as, to be qualified as, or identified as, a guide dog,

signal dog, or service dog," then the city issues a
service dog tag.  (<u>Id.</u>)  Though the City gave Plaintiff
such a tag on December 2, 2008, the City did not
ascertain whether the puppy was trained, nor whether
Plaintiff was a qualified service dog trainer.  (<u>Id.</u> ¶¶
7-10.)  In fact, the City rarely issues a service dog tag
to a puppy less than four months old that has not
received a rabies vaccination.  (<u>Id.</u> ¶ 11.)

     Defendants' expert also testified that working
service dogs are required to be fully vaccinated.
(Montrucchio Decl. ¶ 21.)  As Plaintiff submits no expert
testimony disputing this requirement, Plaintiff fails to
create a triable issue of fact regarding the vaccination
requirements for service dogs.  Plaintiff also admits the
puppy was not vaccinated for rabies at the time of the
incident.  (<u>See</u> Davis Decl. ¶ 9.)

     Thus, the puppy's dog tag alone does not create a
triable issue of fact as to whether the puppy was a
trained service animal within the meaning of the ADA.

     Second, Plaintiff does not present evidence raising a
triable issue of fact with respect to the physical
assistance the puppy provided Plaintiff.  In fact,
Plaintiff admitted in his deposition that the puppy did
not assist him in walking or balancing.  (Davis Dep.

15:17-24.)  Although Plaintiff provided a note from his doctor, this note does not describe how a Great Dane service dog would ameliorate Plaintiff's back disability. (Davis Decl. Ex. 1.)  The doctor's note also does not specify whether Plaintiff's disability requires the assistance of a service dog, but merely states Plaintiff "uses a service animal due to severe back pain / disc degeneration."  (Id.)  Plaintiff does not provide a declaration from his doctor attesting to Plaintiff's physical reliance on the puppy.  Indeed, Plaintiff does not submit any expert evidence showing his disability requires a service dog.

Plaintiff's declaration on its own does not suffice to create a triable issue of fact, especially where his previous deposition testimony contradicts his assertion in the declaration that the puppy ameliorates his disability.  See Kennedy, 90 F.3d at 1481.

The ADA does not create unlimited license for disabled customers to enter facilities of public accommodation with their pets.  The federal regulations limit protected entry to trained service animals that help ameliorate their owner's qualifying disability.  28 C.F.R. § 36.104.  As Plaintiff fails to present any evidence creating a triable issue of fact as to whether Plaintiff's puppy was a trained service dog, the Court

finds Plaintiff cannot - as a matter of law - prove the elements of his ADA claim.

### 3.    Public Health and Safety Defenses

Defendants argue that under the ADA a public accommodation is not required to permit access to a service animal when that animal poses a "direct threat" that jeopardizes public health or safety.  (Mot. at 14.) Defendants contend that, because Plaintiff's puppy was neither vaccinated nor trained, and Defendants' public accommodation was located in an officially declared "rabies area," the law did not require Defendants to permit entrance to Plaintiff and his puppy.  (Id. at 14-15.)  Alternatively, Defendants assert several affirmative defenses under the ADA.  (Id. at 15.)

As Plaintiff fails to submit admissible evidence creating a triable issue of fact with respect to the ADA claim, however, the Court need not consider Defendants' defenses, and instead, finds Plaintiff's ADA claim fails as a matter of law.

## B.    Intentional Infliction of Emotional Distress

To sustain an IIED claim under California law, a plaintiff must prove the following elements:

> (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

27

1  emotional distress; and (3) actual and proximate
2  causation of the emotional distress by the
   defendant's outrageous conduct.

3  <u>Christensen v. Sup. Ct.</u>, 54 Cal. 3d 868, 903 (1991);

4  <u>Hughes v. Pair</u>, 46 Cal. 4th 1035, 1050 (2009).

5

6

7      Here, Defendants were not required to admit

8  Plaintiff's untrained puppy, and therefore, denial of

9  entry does not constitute extreme or outrageous conduct.

10  Nor is there any evidence suggesting Defendants excluded

11  Plaintiff with the intent to cause emotional distress.[16]

12  As there is no evidence raising a triable issue of fact,

13  the Court finds Plaintiff's IIED claim fails as a matter

14  of law.

15

16                      **IV. CONCLUSION**

17      For the foregoing reasons, the Court GRANTS

18  Defendants' Motion, DISMISSES Plaintiff's Complaint

19  against Defendants WITH PREJUDICE, and DENIES as moot

20

21  _____

22      [16] In his Opposition, Plaintiff asserts that "telling
    an African-American he must eat outside is precisely the
    type of discrimination [P]laintiff faced in growing up in
23  the South."  (Opp'n at 12.)  Plaintiff misstates the
    facts, however.  Defendants' manager never denied
24  Plaintiff entry to the restaurant.  In her deposition,
    Ms. Garduno stated she told Plaintiff he could take the
25  food "to-go" or leave his puppy outside.  (Garduno Dep.
    40:9-17.)  Plaintiff seems to argue that race
26  discrimination constitutes the extreme or outrageous
    conduct necessary to establish an IIED claim.  <u>Id.</u>  As
27  Plaintiff offers no evidence suggesting Ms. Garduno
    denied entry to Plaintiff on account of his race, the
28  Court finds this argument has no basis in fact.

                           28

1  Plaintiff's Ex Parte Application to Amend the Scheduling

2  Order.

3

4  Dated: January 24, 2012          _____

5                                         VIRGINIA A. PHILLIPS
                                    United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28